WAGNER, Appellant,

v.

ALLIED STEEL & TRACTOR COMPANY, Appellee.

[Cite as *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67976.

Decided Aug. 7, 1995.

*Alan I. Goodman,* for appellant.

*Millisor & Nobil* and *Keith L. Pryatel,* for appellee.

PATRICIA ANN BLACKMON, Judge.

Robert Wagner, plaintiff-appellant, appeals the trial court's granting summary judgment in favor of Allied Steel & Tractor Company, defendant-appellee, in an employment discrimination action. Wagner assigns the following error for our review:

*"The trial court erred in granting the appellee summary judgment."*

Having reviewed the record and the arguments of the parties, we affirm the decision of the trial judge. The apposite facts follow.

Robert Wagner, a white male, was an employee at Allied Steel. Near the end of his work shift, Wagner and other employees within his department began tossing small metal rings at one another. This action was in violation of company policy prohibiting the throwing of objects and horseplay. The employees had

been reminded of the policy in an October 1989 memo from Allied's president, P. Rosengaard, which provided that physical action toward another employee would be grounds for immediate dismissal.

After a short time, Wagner began tossing rings at Don Matthews, an African-American male, who was working in a nearby department. Wagner had thrown several rings at Matthews when Matthews picked up an aluminum sleeve and threw it at Wagner. Matthews then threw a second aluminum sleeve at Wagner. At that time, Wagner walked up to Matthews and asked what the problem was. Matthews then punched Wagner in the face. For this conduct, both men were fired by Allied Steel.

On September 20, 1993, Robert Wagner filed a complaint alleging that Allied Steel violated R.C. Chapter 4112 by discharging him from employment on the basis of race. Wagner alleged that Allied Steel wanted to fire Matthews but feared a racial discrimination suit. According to Wagner, he was discharged in order to provide Allied Steel a defense to a racial discrimination charge.

On April 29, 1994, Allied Steel filed a motion for summary judgment alleging, among other things, that Wagner failed to make a prima facie case of reverse racial discrimination. On September 6, 1994, the trial court granted Allied Steel's motion for summary judgment. This appeal followed.

██ Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts, and written stipulations of facts show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). When evaluating a motion for summary judgment, the trial court must construe the evidence most strongly in favor of the nonmovant. *Id.* Consequently, any doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140. The nonmovant must produce evidence on any issue for which he bears the burden of production at trial. *Wing v. Anchor Media, Ltd., of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099.

██ The basic elements of a racial discrimination case against an employer were set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. In order to make a prima facie case of racial discrimination, the employee must show that (1) he was a member of a statutorily protected class; (2) he was discharged from his job by the employer; (3) he was qualified for the position; and (4) either he was replaced by a person not belonging to the protected class or his discharge enabled the employer to retain such a person. *Id.*

■ In reverse discrimination cases, the first element has been modified to require the plaintiff to show background circumstances supporting the inference that his employer was the unusual employer who discriminated against nonminority employees. See *Notari v. Denver Water Dept.* (C.A.10, 1992), 971 F.2d 585, 589.

■ Once a prima facie case of discrimination has been established, a presumption of unlawful discrimination arises. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407, 416. Then, the defendant must present a legitimate, nondiscriminatory reason for the plaintiff's discharge. Thereafter, in order to defeat summary judgment, the plaintiff must show the employer's reason for the discharge is pretextual. *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, 148, 6 OBR 202, 203–204, 451 N.E.2d 807, 809–810. The burden of persuasion remains with the plaintiff at all times. *Smith v. Dayton* (S.D.Ohio 1993), 830 F.Supp. 1066, 1076–1077.

■ We must first determine whether the evidence put forth by Wagner established a prima facie case of reverse employment discrimination. It is undisputed that Wagner was fired from his job. However, Allied Steel argues Wagner did not provide evidence of "background circumstances" indicating a pattern of discrimination against white employees. In explaining the "background circumstances" requirement, the *Notari* court stated:

"The *McDonnell Douglas* presumption—that is, the presumption that unless otherwise explained, discrimination is more likely than not the reason for the challenged decision—is valid for a reverse discrimination claimant only when the requisite background circumstances exist. Thus, we agree that a Title VII disparate treatment plaintiff who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari*, 971 F.2d at 589.

Wagner argues that an inference of discrimination may arise without a showing of background circumstances where there is a showing that similarly situated employees of different races are treated differently. In support of his claim, he points out that, in the past, minority employees, including Matthews, were not fired after reported incidents of horseplay or fighting. The evidence revealed that Wagner, too, had been spared disciplinary action after incidents of fighting with other employees. In one incident, during an argument with another employee, Wagner bit the other man's finger. However, no disciplinary action was taken against Wagner.

Wagner has not shown that Allied Steel's failure to take disciplinary action was limited to incidents involving minority employees. Under the circumstances, we find Wagner has not met his burden of production with respect to establishing a pattern of discriminatory conduct by Allied Steel against white employees.

In its motion for summary judgment, Allied Steel also argued that Wagner failed to produce evidence that he was qualified for the position. In response, Wagner pointed out that he had received several satisfactory evaluations and pay increases and had not received any unfavorable evaluations of his job performance. We find that Wagner met his burden of producing evidence that he was qualified to perform his job responsibilities. Although Wagner admitted engaging in horseplay during work hours, we are not convinced by Allied Steel argument that Wagner's engaging in horseplay indicates a failure to properly perform his job duties. The record contains no evidence of complaints about the quality or quantity of Wagner's work. There is no indication that Wagner was failing to fulfill his job responsibilities. We find that Wagner went forward with enough evidence to show he was qualified for his job at Allied.

We find, however, that Wagner did not meet the fourth element of his prima facie case because he was not replaced by a member of the protected class. In his affidavit, Frank Borland stated that Wagner was not replaced, but that his duties were assumed by his supervisor, a white male. In *Barnes v. GenCorp* (C.A.6, 1990), 896 F.2d 1457, the court held that an employee is not replaced when his duties are distributed among existing employees already performing related work. Accordingly, Wagner did not go forward with evidence that he was "replaced" by a minority employee.

We find that Wagner did not go forward with evidence sufficient to establish a prima facie case of reverse racial discrimination. Assuming, *arguendo*, that a prima facie case had been established, the next issue for our review would be whether Allied Steel was able to advance a legitimate, nondiscriminatory reason for firing Wagner. Wagner's employee handbook provided that "any form of horseplay, running or throwing of objects is strictly prohibited as it may result in serious personal injury." In a 1989 memo, Allied Steel's President clarified the company's penalty for fighting and physical confrontations between employees.

"I want to make it very clear that such behavior is totally unacceptable. Verbal abuse will lead to serious disciplinary action; physical action to immediate dismissal."

At the time of the incident, Wagner was admittedly aware of the rules prohibiting horseplay or throwing of objects. Company policy clearly provided for termination of any employee for fighting. Additionally, Wagner had been warned by his supervisor that if he ever got into a fight with another employee in

which one person punched the other, both would be fired. Despite this knowledge, he tossed small metal rings at Donnie Matthews, which ultimately led to Matthews's punching him. By throwing the rings, Wagner deliberately violated company policy and was consequently subject to disciplinary action. We find that Allied Steel demonstrated a legitimate nondiscriminatory reason for Wagner's termination.

Once Allied came forward with a legitimate nondiscriminatory reason for firing Wagner, the burden shifted back to Wagner to show that the reason given was merely a pretext. Wagner argued that he was fired along with Matthews in order to provide Allied with a defense in the event Matthews filed a racial discrimination action. Allied Steel stated that Wagner was properly fired for violation of company rules against horseplay and fighting. Wagner admitted that he initiated the horseplay which resulted in Matthews punching him. We find that Wagner failed to disprove the truth of Allied's assertion that he was dismissed for a legitimate nondiscriminatory reason. According to the United States Supreme Court, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr., supra,* 509 U.S. at 515, 113 S.Ct. at 2752, 125 L.Ed.2d at 422. Consequently, Wagner did not meet his burden of showing that the stated reason for his discharge was pretextual. We affirm the decision of the trial court.

The judgment is affirmed.

*Judgment affirmed.*

HARPER and NAHRA, JJ., concur.